UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
No. 5:26-cv-26

| | |
|---|---|
| **KAYCE N. JENKINS**, <br><br> Plaintiff, <br><br> v. <br><br> **ANYWHEREWORKS, INC.**, <br><br> Defendant | **COMPLAINT** <br> (Jury Trial Demanded) |

COMES NOW the Plaintiff, Kayce Jenkins, by and through the undersigned counsel, who does allege and say of Defendants AnywhereWorks, Inc. as follows:

## PARTIES

1. Plaintiff Kayce Jenkins (hereinafter "Plaintiff") is an individual and resident of Harmony, Iredell County, North Carolina and was employed by Defendant until the time of her termination as described hereinbelow.

2. Defendant AnywhereWorks, Inc. (hereinafter "Defendant") is a company based in the State of Oregon, and incorporated under the laws of the State of North Carolina. Defendant employs more than 1,000 employees including, without limitation, employing one or more employees in Iredell County, North Carolina.

## JURISDICTION AND VENUE

3. The United States District Court for the Western District of North Carolina has personal jurisdiction over the Defendants by virtue of the Defendants conducting ongoing business within this District, namely, without limitation, by employing employees in this District.

4. The United States District Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331, in that claims made in this action arise under the laws of the United States; as well as under 28 USC § 1367, in that such claims not arising under the laws of the United States are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

## FACTS ALLEGED

5. The Plaintiff was employed by the Defendants as a LEX Associate beginning on or about July 3, 2023, working remotely from home.

6. Plaintiff's job responsibilities included providing answering and scheduling services for one or more law offices on a remote basis.

7. Defendants' business is decentralized and generally depends on task assignments for work required by Defendant's customers to a pool of available remote workers; in general, Defendant advertises this flexibility and the depth of its pool of employees by touting that prospective clients will have access to "Live Professionals 24/7/365".

8. At all times during her employment, Defendant exercised complete control over Plaintiff's daily activities, including instituting policies to be followed by Defendants' employees, requiring the termination or discipline of Defendants' employees, and generally directing Defendants' employees in their daily operations.

9. Plaintiff generally performed her work in a manner acceptable to the Defendant, and within the realm of what could have been reasonably expected of a worker in the position of LEX Associate for the Defendant.

10. Since during or before July 2023, Plaintiff is an individual suffering from the effects of attention deficit hyperactivity disorder ("ADHD"), stress adjustment disorder ("SAD"), and Generalized Anxiety Disorder ("GAD"), which conditions impact her cognition, emotional state, and ability to work without accommodations on a daily basis, and as such was and is a person with a disability as defined by the Americans with Disabilities Act of 1990, as amended.

11. Plaintiff's disability conditions cause her to suffer from debilitating anxiety attacks in times of heightened stress, which anxiety attacks are unpredictable in nature and are generally not preventable through pharmaceutical intervention.

12. In January 2024, Plaintiff made the Defendant aware of these conditions, and the Defendant was aware that Plaintiff needed to take time off for medical visits, and that Plaintiff's doctor had advised her to work a reduced schedule due to those disability conditions, as it lessens the likelihood and frequency of complications arising from those conditions.

13. Plaintiff provided the Defendant with a doctor's note and a Family and Medical Leave Act ("FMLA") request asking for a reduction in total working hours in the event of an anxiety/panic attack, which request was to last for a period of one to three months from February 1, 2024.

14. Initially, Defendant refused to accept Plaintiff's FMLA and ADA accommodation forms on three occasions, each time finding insignificant and unsubstantial reasons to nitpick the Plaintiff's doctor's language or manner of completing the form. Each rejection required the Plaintiff to go back to her doctor's office to request a new or corrected form.

15. The Defendant's requests for modification of the form were unreasonable and solely intended to harass, delay, and frustrate the Plaintiff from exercising her legal rights.

16. During this time, the Defendant advised the Plaintiff that it would not grant her leave unless she worked additional hours to make up for any missed time, despite Plaintiff's doctor's note stating that a decrease in working hours was needed.

17. Further, on various occasions Plaintiff made the Defendant aware that she was taking medicine, namely Strattera and Wellbutrin, which medications had the effect of causing difficulty sleeping and/or difficulty waking for the Plaintiff.

18. On February 27, 2024, Defendant terminated Plaintiff, purportedly for an instance of absence that occurred on or about February 19, 2024, which Plaintiff had explained was connected to her disability and the medication she took for such disability.

19. Non-disabled employees with the Defendant who had similar instances and records of No/Late Contact tardiness or absence, have not been and would not have been similarly terminated.

20. Indeed, the Defendant's entire business model is built upon what is essentially the "replaceability" of any given employee, and the "flexibility" offered to its employees.

21. In reality, Plaintiff's termination was based solely on discrimination against Plaintiff due to her disability, and in retaliation based on Plaintiff's request for a reasonable accommodation, as well as Plaintiff's request for FMLA time off.

22. Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation based on disability.

23. The EEOC issued Plaintiff a 90-Day Right to Sue Letter to the Plaintiff in regard to Plaintiff's claims, and the Plaintiff is hereby timely filing a complaint against the Defendants pursuant to those letters.

## FIRST CAUSE OF ACTION
**(Failure to Provide Reasonable Accommodation for Disability and Discrimination on the Basis of Disability in Violation of 42 U.S.C. Chapter 126, Subchapter 1, § 12112 and 42 U.S.C. § 2000e-2, 2000e-3, *et seq.*)**

24. Plaintiff hereby incorporates by reference paragraphs 1 through 23 as if fully stated herein.

25. Defendants employed Plaintiff in an at-will capacity until Plaintiff's termination on or about February 27, 2024.

26. Plaintiff was terminated due to Plaintiff's disability, and in retaliation against Plaintiff for her requests for accommodation due to her disabilities, and opposition to

Defendant's discriminatory practices in failing to accommodate her disability needs, and not due to any pretextual reason provided by Defendants.

27. Further, in terminating Plaintiff after only partially granting Plaintiff's request for reasonable accommodations, Defendant failed to meaningfully engage in the interactive process required by the ADA, and refused to grant her the reasonable accommodations to which she was entitled, including, but not limited to, being permitted to work a reduced schedule in the event of the onset of any panic attack.

28. Defendants' refusal to reasonably accommodate and termination of Plaintiff was and is in violation of the Americans with Disability Act of 1990, as amended.

29. Plaintiff was and is damaged by Defendants' actions in an amount greater than $75,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendants' wrongful discharge of Plaintiff, as well as damages for emotional distress.

30. The Defendants' actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendants.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of 42 U.S.C. Chapter 126, Subchapter 1, § 12203 and 42 U.S.C. § 2000e-2, 2000e-3, *et seq.*)**

31. Plaintiff hereby incorporates by reference paragraphs 1 through 30 as if fully stated herein.

32. When Defendant received notice of the Plaintiff's request for reasonable accommodation, the Defendant began intentionally targeting Plaintiff for

micromanagement, increased scrutiny, and monitoring of her working schedule not engaged in with non-disabled employees.

33. Further, Defendant terminated the Plaintiff mere days after making her request for a reasonable accommodation, for purported acts that would not have lead to the suspension and termination of a non-disabled employee.

34. This action was done clearly in retaliation to the Plaintiff having exercised her lawful right to request a reasonable accommodation from the Defendant, and had no other justification under the unemployment laws or regulations of the United States or the State of North Carolina.

35. Plaintiff was and is damaged by Defendants' actions in an amount greater than $75,000.00, to be proven with more specificity at trial.

36. The Defendants' actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendants.

THIRD CAUSE OF ACTION
(Wrongful Discharge in Violation of Public Policy)

37. Plaintiff hereby incorporates by reference paragraphs 1 through 30 as if fully stated herein.

38. The Defendants' termination of the Plaintiff was done in violation of the public policy of the State of North Carolina as embodied in N.C. Gen. Stat. § 143-422.1, *et seq.*, the North Carolina Equal Employment Practices Act.

39. The Plaintiff was terminated due to discrimination against her for her disability.

40. The Plaintiff has suffered damages in excess of $75,000.00, in an amount to be proven at the trial of this matter.

## PRAYER OF RELIEF

NOW WHEREFORE the Plaintiff does pray the Court as follows:

1. That the Plaintiff have and recover a judgment against Defendant in an amount greater than $75,000.00; to be proven more specifically at the time of trial, which judgment shall include lost wages, lost benefits, emotional distress, and economic and compensatory damages as allowed by law.

2. That an award of punitive damages be assessed against the Defendant.

3. That all issues so triable be tried by jury.

4. That the cost of this action be taxed against the Defendant.

5. That Plaintiff be awarded its reasonable attorneys' fees.

6. For such further and other relief as the Court deems just, fitting, and proper.

This is the 11th day of February, 2026.

        **Pope McMillan, P.A.**
        Attorneys for the Plaintiff


By:    /s/ Clark D. Tew
        Clark D. Tew
        N.C. State Bar No. 41632
        P.O. Drawer 1776
        Statesville, NC 28687
        (704) 873-2131
        ctew@popemcmillan.com